# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:17-cr-196 |
| IVAN DUANE WILLIAMS, *et al.*, | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

At issue post trial in this sex-trafficking prosecution is the proper amount of restitution to be paid by the four convicted sex traffickers to the three minor victims of the sex trafficking. More specifically, defendants Ivan Williams ("Williams"), Dennis Davis ("Davis"), Chelsea Canterbury ("Canterbury"), and Rebecca Hamilton ("Hamilton") were convicted of sex trafficking three minors, A.L., J.C., and J.C.M. Following defendants' convictions, the government moved for a restitution order in the amount of $119,300[1] to be paid jointly and severally by the four convicted defendants. At sentencing, the defendants disputed the amount and allocation of the government's proposed restitution amount. The matter has been fully briefed and argued and is now ripe for disposition.

### I.

The pertinent facts may be succinctly summarized. On April 25, 2017, Hamilton was charged in, and pled guilty to, a one-count criminal information of aiding and abetting Canterbury, Williams, and Davis to recruit, entice, and maintain in prostitution three minor girls,

---

[1] Although the government initially requested entry of a restitution order in the amount of $144,300, it appears that one of the minor victims, A.L., has revised her estimation of her average daily earnings in prostitution. Specifically, A.L. initially estimated that she earned $2,000 per day but later advised the government that $1,000 per day was a more accurate estimate.

1

A.L., J.C., and J.C.M., in violation of 18 U.S.C. § 1591.  Thereafter, on September 6, 2017, defendants Williams, Davis, and Canterbury were indicted by a grand jury on one count of conspiracy to engage in sex trafficking of minors and three substantive counts of sex trafficking of minors in violation of 18 U.S.C. § 1591.  Prior to trial, Canterbury pled guilty to the three substantive counts of sex trafficking of minors and began cooperating with the government.  Williams and Davis entered pleas of not guilty, and the case proceeded to a jury trial beginning on January 3, 2018.

At Williams's and Davis's trial, the government presented the testimony of several witnesses, including: cooperating defendants Hamilton, Canterbury, the three minor victims, Detectives Doug Carey Wood and Al Richardson with Henrico County Police, Detectives Brendan Miller and John Spata with Fairfax County Police, and FBI Special Agent Alix Skelton.  The government also introduced into evidence more than 200 exhibits, including: social media postings, prostitution advertisements for each of the minor victims, and text message conversations between the defendants and the victims.  This evidence, admitted over the course of the six-day trial, revealed the existence of a prostitution conspiracy in which Hamilton, Canterbury, Williams, and Davis worked together to prostitute the minor victims, A.L., J.C., and J.C.M., in various locations on the east coast from September through November 2016.  Specifically, the adults enticed the minor victims to enter, or return to, prostitution, taught the minor victims rules for prostitution, posted advertisements for prostitution dates on websites like Backpage.com, booked hotel rooms for the prostitution dates, drove the minor victims to their prostitution dates, and collected the money the minor victims earned through prostitution.

On January 10, 2018, the jury returned a verdict of guilty on all four counts for defendants Williams and Davis.  All four defendants were sentenced on various dates: Hamilton

and Canterbury were ultimately sentenced to 50 months imprisonment,[2] and Williams and Davis were sentenced to 312 months imprisonment. Thereafter, on April 11, 2018, the government filed its motion seeking $119,300 in restitution for the minor victims, A.L., J.C., and J.C.M., pursuant to the Trafficking Victims Protection Act ("TVPA").[3] Specifically, the government seeks the following amounts based on the defendants' gross proceeds from each of the minor victims' prostitution: (i) $25,000 for A.L., (ii) $34,300 for J.C., and (iii) $60,000 for J.C.M. The government calculated these amounts by multiplying the average daily prostitution earnings of each minor victim by the number of prostitution advertisements featuring each woman. All four defendants oppose the government's motion on several grounds, arguing (i) that the restitution calculations are not sufficiently reliable, (ii) that the minor victims should be awarded the statutory minimum wage, not their estimated prostitution proceeds, and (iii) that the defendants should not be jointly and severally liable for the restitution payments. These issues have been fully briefed and argued and are now ripe for disposition.

**II.**

There is no dispute that the text of the TVPA makes restitution mandatory in this case. Specifically, the TVPA provides that "the court *shall order restitution* for any offense under [chapter 77 of Title 18 of the U.S. Code]." 18 U.S.C. § 1593(a) (emphasis added). And chapter 77 includes sex trafficking of children in violation of 18 U.S.C. § 1591. That the four defendants here were convicted of the offense of sex trafficking of children, in violation of 18 U.S.C. § 1591 thus triggers the TVPA's mandatory restitution requirement.

---

[2] Hamilton was initially sentenced to 120 months imprisonment, the mandatory minimum for this offense. After Hamilton cooperated with the government and testified at trial, the government moved to reduce Hamilton's sentence pursuant to Rule 35(b)(1), Fed. R. Crim. P. The motion was granted and Hamilton's sentence was reduced to 50 months. With respect to Canterbury, the government moved at sentencing for a downward departure pursuant to U.S.S.G. § 5K1.1 as a result of Canterbury's substantial assistance in cooperating with the government and testifying at trial. The motion was granted and Canterbury was sentenced to 50 months imprisonment.

[3] 18 U.S.C. § 1593, *et seq.*

With respect to the amount of this mandatory restitution, the TVPA makes clear that a defendant must pay his victim "the full amount of the victim's losses," which includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." *Id.* §§ 1593(b)(1), (3). Thus, it appears from the text of the TVPA that where, as here, defendants entice minor victims to engage in prostitution, the minor victims are entitled to the proceeds of their illegal prostitution activities.

It is worth pausing at this point to note the anomaly that results from this construction and application of the TVPA: the minor victims of sex traffickers are given the profits or proceeds of their illegal prostitution activities. It might seem more appropriate to require forfeiture of the prostitution profits or proceeds, rather than restoring the amount to the minor victims, and to limit restitution to sums the minor victims might require for counselling and other services to enable them to recover from their victimization by defendants. But this apparent anomaly has not prevented courts from concluding that restitution to child victims of sex trafficking must include the profits or proceeds of their illegal prostitution activities. Thus the Second Circuit has held that "the express terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct."[4] Accordingly, it is appropriate, and indeed necessary, to consider the gross income or value of the minor victims' prostitution activities in calculating the amount of restitution owed by defendants here.

---

[4] *See also United States v. Webster*, 2011 WL 8478276, at *3-4 (9th Cir. 2011) ("The statutory language is clear that mandatory restitution includes not only the victims' actual losses, but also the defendant's ill-gotten gains."); *United States v. Cortes-Castro*, 511 Fed. App'x 942, 947 (11th Cir. 2013) (same); *United States v. Lewis*, 791 F. Supp. 2d 81, at *90 (D.D.C. 2011) (quoting *Mammedov*)

4

In this case, the government has calculated the "gross income or value to the defendant[s] of the victim[s'] services or labor" to be $119,300. In support of this calculation, the government introduced at trial Backpage.com advertisements of the minor victims, which revealed that A.L. worked in prostitution for the defendants on 25 days, J.C. worked on 49 days, and J.C.M. worked on 30 days. *See* Trial Ex. 257. The minor victims also explained their average daily earnings from prostitution in statements to Special Agent Skelton. Specifically, A.L. explained that she earned approximately $1,000 per day, J.C. earned on average $700 per day, and J.C.M. earned on average $2,000 per day. *See* Doc. 163 Exs. B-D. This evidence, taken together, is sufficiently reliable and persuasive to show that the defendants' gross income from the minor victims' prostitution included (i) $25,000 ($1000 x 25 days) from A.L., $34,300 ($700 x 49 days) from J.C., and $60,000 ($2,000 x 30 days) from J.C.M.

In an attempt to dispute this restitution amount, defendants advance a number of arguments, none of which is persuasive. To begin with, defendants argue that the government's restitution calculation is based only on an "adolescent's airy estimate of past daily earnings[,]" and as such is not certain enough to justify a restitution order. Canterbury Opp. to Gov't Position on Restitution at 2. But this argument fails, as courts have made clear that the amount of restitution need not "be proven with exactitude." *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012). Rather, all that is required to support a restitution order is "some reasonable certainty." *United States v. Monzel*, 641 F.3d 528, 540 (D.C. Cir. 2011) (quoting *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007)). In this regard, courts calculating restitution amounts are entitled to rely on any evidence "bearing 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Baston*, 818 F.3d 651, 665 (11th Cir. 2016). And importantly, evidence can be sufficiently reliable for restitution purposes even where it is not

subject to cross-examination. *See United States v. Hairston*, 888 F.2d 1349, 1353 n.7 (11th Cir. 1989) (relying on hearsay evidence to calculate restitution); *In re Sealed Case*, 702 F.3d at 67 (relying on grand jury testimony to calculate restitution).

Here, the minor victims' calculations of their average daily earnings, provided in statements to Special Agent Skelton, are sufficiently reliable to serve as the basis for a restituit on order because the statements were corroborated by the evidence introduced over the course of trial. For example, A.L. and J.C.M. both testified under oath that they generally charged $300 per hour with a client. *See* Williams Jan. 5, 2018 Tr. 145:21-22, 184:17-18. The Backpage ads, consistent with the minor victims' testimony, also showed that clients were generally charged $300 for an hour. *See, e.g.*, Trial Ex. 191A. And the evidence adduced at trial revealed that when Detective Wood of the Henrico County Police responded to a Backpage.com advertisement for J.C.M., Detective Wood learned that J.C.M.'s rate was $250-$300 per hour and $200 for a half hour. *See* Trial Ex. 22. Similarly, when Fairfax County Detective Miller testified to setting up a prostitution date with J.C., his text message conversations revealed that J.C.'s rate was $160 for a half hour. *See* Trial Ex. 2. With respect to the minor victims' earnings per day, J.C. testified at trial that she earned $810 on her first day of prostitution, *see* Williams Jan. 8, 2018 Tr. 63:1-7, Hamilton testified that she, A.L., and J.C.M. could "make a couple thousand dollars in a day," Williams Jan. 4, 2018 Tr. 126:7-14, and Canterbury testified that Williams wanted the women to make $1,000 per day and became upset if the women did not earn $1,000 per day, *see id.* at 178:6-15. Thus, the evidence adduced at trial fully supports the minor victims' estimates of their average daily earnings, and as such, the estimates bear sufficiently reliability to support a restitution order.

Defendant Davis next argues that the restitution amount should be calculated using the minimum wage, and not the value of the minor victims' prostitution proceeds. The statutory text of the TPVA makes clear that courts must direct defendants to pay "*the greater* of the gross income or value to the defendant of the victim's services or labor *or* the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(3) (emphasis added). Here, the gross income or value of the minor victim's services is $119,300. By contrast, the value of the victims' labor under the guarantees of the FLSA is only $6,102.[5] Because $119,300 is greater than $6,102, the TVPA mandates restitution in the amount of $119,300.

Defendants Canterbury and Hamilton also argue that because they passed most of the minor victims' prostitution proceeds to defendants Williams and Davis, defendants Canterbury and Hamilton should not be jointly and severally liable for all of the victims' losses. This argument fails because the text of the TVPA makes clear that restitution orders under the TVPA "shall be issued and enforced in accordance with section 3664 in the same manner as an order under 3663A." 18 U.S.C. § 1593(b)(2). Section 3664(h), in turn, provides that if more than one defendant has contributed to a victim's loss, "the court may make each defendant liable for payment of the full amount of restitution … ." 18 U.S.C. § 3664(h). Here, the defendants were all convicted of sex-trafficking, or aiding and abetting the sex-trafficking of, the three minor victims, and the evidence adduced at trial showed that all four defendants contributed to the victims losses by enticing the victims into prostitution and then exploiting the victims. Because the defendants all contributed to the minor victims' losses, the statute plainly enables the court to make each defendant jointly and severally liable for the full restitution amount.

---

[5] This calculation uses an 8-hour work day and the federal minimum wage of $7.25 per hour to calculate that defendants are responsible for a total of $6,102: $1,450 to A.L., $2,842 to J.C., and $1,710 to J.C.M.

## III.

In sum, the TVPA requires a court to order restitution where, as here, defendants are convicted of sex-trafficking minor victims in violation of 18 U.S.C. § 1591. In this regard, the statute also makes clear that courts must order restitution equal to "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." *Id.* §§ 1593(b)(1), (3). Here, reasonably reliable and persuasive evidence adduced at trial and in statements by the minor victims establishes that all four defendants contributed to the minor victims' losses and that the defendants earned $119,300 from the minor victims' prostitution. Accordingly, defendants are jointly and severally liable for $119,300 in restitution.

An appropriate Restitution Order will issue.

Alexandria, Virginia,
June 8, 2018

/s/
_____
T. S. Ellis, III
United States District Judge